UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SOULETTE KATRENE
COSMA,

                Plaintiff,

v.

COMMISSIONER OF
SOCIAL SECURITY,

                Defendant.

_____/

Case No. 2:14-cv-11787

District Judge Robert H. Cleland

Magistrate Judge Anthony P. Patti

## REPORT AND RECOMMENDATION TO GRANT DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (DE 14) AND TO DENY PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (DE 12)

I.    **RECOMMENDATION**: For the reasons that follow, it is

**RECOMMENDED** that the Court **GRANT** Defendant's motion for summary

judgment, **DENY** Plaintiff's motion for summary judgment, and **AFFIRM** the

Commissioner's decision.

II.    **REPORT**

       Plaintiff, Soulette Katrene Cosma, brings this action under 42 U.S.C. §§

405(g) and 1383(c)(3) for review of a final decision of the Commissioner of Social

Security  ("Commissioner") denying her applications for supplemental security

income.  This matter is before the United States Magistrate Judge for a Report and

Recommendation on Plaintiff's motion for summary judgment (DE 12), the

Commissioner's memorandum in opposition and cross motion for summary judgment (DE 14), Plaintiff's reply (DE 15), and the administrative record (DE 9).

## A.  Background

Plaintiff protectively filed her application for benefits on October 14, 2010, alleging that she has been disabled since that date, at age 37.[1]  (R. at 112-13, 151.) Plaintiff alleges disability as a result of lupus, depression, heart disease, kidney disease, osteoporosis, and high blood pressure.  (R. at 151.)  Plaintiff's application was denied initially and upon reconsideration.  Plaintiff sought a *de novo* hearing before an Administrative Law Judge ("ALJ").  ALJ Patricia McKay held a hearing on July 23, 2012 and subsequently determined that Plaintiff was not disabled within the meaning of the Social Security Act.  (R. at 66-89.)  On March 25, 2014 the Appeals Council denied Plaintiff's request for review.  (R. at 1-4.)  ALJ McKay's decision became the Commissioner's final decision.  Plaintiff then timely commenced the instant action.[2]

---

[1] Plaintiff initially indicated that her alleged onset date was November 17, 2007. (R. at 151.)  At the hearing, however, Plaintiff and her counsel amended the alleged onset date to her application date of October 14, 2010.  (R. at 112-13.)

[2] Of note, Plaintiff was found disabled as of September 1, 2002 and then found to be no longer disabled as of December 1, 2004.  This decision was upheld at the hearing level on June 27, 2008.  (R. at 131-150.) In the instant action, for the purposes of clarifying why the principles of *res judicata* should not apply, the ALJ concluded that there had been an improvement in Plaintiff's condition since the prior decision because Plaintiff performed substantial gainful activity in 2010.  *See Drummond v. Comm'r of Soc. Sec.*, 126 F.3d 837 (6th Cir. 1997) (holding that a

### B.    Plaintiff's Medical History

Plaintiff suffers from a variety of physical and mental conditions that are addressed in the voluminous record.  For the purposes of this Report and Recommendation, I will outline only the conditions and practitioners that are relevant to my Report.

Plaintiff has been diagnosed with systemic lupus erythematosus ("lupus"), osteoporosis, hyperlipidemia, and esophageal reflux.  Rheumatologist Patricia Dhar, M.D., has treated Plaintiff for a number of years.  On September 24, 2010, Dr. Dhar noted that Plaintiff's systemic lupus erythematosus, osteoporosis, hyperlipidemia, and esophageal reflux was under fair control and that she had normal musculature.  (R. at 288-91.)  Dr. Dhar also noted that Plaintiff suffered from shortness of breath, which was alleviated by the use of a Ventolin inhaler. (R. at 288.)  Dr. Dhar recommended that Plaintiff exercise and noted that Plaintiff reported that she was working out with her mother and changing her eating habits. (Id.; *see also* R. at 602 and 613, in which Plaintiff reported she was exercising daily.)  On June 29, 2011, Dr. Dhar opined that Plaintiff was permanently and totally disabled from work.  (R. at 393.)  Significantly however, on September 22, 2011, Dr. Dhar's treatment notes indicate that Plaintiff's lupus was under "fair control" and there was "no active disease."  (R. at 622 and 624.)  On the same day,

prior finding concerning Plaintiff's RFC is binding unless there is evidence of an improvement or change in condition).

3

Dr. Dhar noted that Plaintiff's symptoms of depression were triggered by a denial of social security benefits, but at her next visit on October 3, 2011, Dr. Dhar noted that Plaintiff's depression was "much better." (R. at 613.)

On January 28, 2009, Plaintiff saw cardiologist Muhammad Raufi, M.D. (R. at 301-303.) Dr. Raufi noted that Plaintiff had an ejection fraction of 65[3] and her respiratory pattern was unlabored. (R. at 301-302.) Plaintiff was seen by James Rowley, M.D., on October 22, 2009, for evaluation of dyspnea. (DE 304-307.) Dr. Rowley concluded that her lungs were clear to auscultation and percussion, she was alert and oriented, and suggested a psychiatric work up. (R. at 307.) Plaintiff was seen by Fateh Elkhatib, M.D., on January 26, 2010. (R. at 308-310.) Dr. Elkhatib concluded that Plaintiff's osteoporosis was uncontrolled and started her on Alendronate. (R. at 309.)

Dr. A. Rodgers diagnosed Plaintiff with major depressive disorder and schizoaffective disorder on October 9, 2010. (R. at 298.) Plaintiff underwent examination by State Agency psychological reviewer Terrance Mills on February 5, 2011 (R. at 371-375) and on March 26, 2011 (R. at 387-391.) At the initial visit, Dr. Mills noted that Plaintiff was not capable of managing her income and was not suitable for work due to mood swings, psychosis, depressive issues, and medical

---

[3] Ejection fraction "represents the percentage of the blood in the ventricle actually pumped out with each contraction." 20 C.F.R. § 404 Subpt. P, App 1 (D). "A normal ejection fraction is greater than 55% . . . ." *Diamond v. Comm'r of Soc. Sec.*, 154 F. App'x 478, 480 (6th Cir. 2005).

problems.  (R. at 375.)  At the second visit, Dr. Mills revised his assessment to indicate that Plaintiff was capable of managing her income, but felt that the stress and pressure of employment would cause her further problems.  (R. at 391.)

Plaintiff underwent examination by State Agency consultative examiner E. Montsair, M.D., on February 5, 2011.  (R. at 362-365.)  Dr. Montsair indicated that Plaintiff looked "chronically ill," but was well nourished and in no acute distress. (R. at 363.)  Dr. Montsair noted that Plaintiff's gait was normal, but she was unable to squat and had significant joint swelling in her right knee.  According to Dr. Montsair, Plaintiff's fine and gross dexterity was intact.  (R. at 364.)  Dr. Montsair ultimately opined that Plaintiff would have significant difficulty working because of generalized fatigue secondary to her lupus.  In addition, he noted that Plaintiff should be limited from lifting, pushing, or pulling anything over five pounds.

In June 2012, Plaintiff's records were reviewed by State Agency consultant Muhammad Mian, M.D., who concluded that Plaintiff was capable of performing light work.  (R. at 160.)  He noted that Plaintiff was capable of lifting ten pounds frequently, twenty pounds occasionally, and could sit for about six hours in an eight hour workday.  (Id.)

Plaintiff attended a cardiology consultation on January 23, 2012, with Mahir Elder, M.D.  (R. at 412-415.)  Dr. Elder noted that Plaintiff denied complaints of chest pain and shortness of breath and "denied any complaints at this moment."

5

(R. at 412.)  Dr. Elder pointed to a December 2011 echocardiogram indicating that Plaintiff had an ejection fraction of 50-55%.  (R. at 413.)  He also noted that her lungs were clear and she had 5/5 muscle strength.

Plaintiff saw Murta Hussain, M.D., on March 19, 2012.  (R. at 425-428.) Plaintiff indicated that she had no current complaints and denied shortness of breath, joint pain, anxiety, and depression.  (R. at 425.)  Dr. Hussain found no evidence of hallucinations, no delusions, and no psychotic thoughts.  (R. at 428.) Plaintiff returned to Dr. Hussain on June 16, 2012 and complained of back pain. (R. at 420-424.)  Plaintiff's straight leg raise test was positive, but Dr. Hussain found that her range of motion was normal in her upper and lower extremities and no joint crepitations were present.  (R. at 421.)

## C.    Hearing Testimony

### 1.    Plaintiff's Testimony

Plaintiff testified that (as of the time of the hearing) she suffered from lupus, osteoporosis, hypertension, and issues with her heart, kidneys, and stomach.  (R. at 106.)  When her lupus began in 2007, she did not remember who she or her family members were, could not bathe, use a fork, or match her clothes.  (R. at 105.) Plaintiff testified that she has mood swings and difficulty with memory because of her lupus.  (R. at 118.)  She is on multiple medications for her conditions, including Forteo injections for osteoporosis, Strattera, and prednisone.  (R. at 106,

108, and 111.)  In addition, to help with her pain, she props her chest up with a pillow and elevates her legs above her heart two or three times per week.  (R. at 106, 111, and 116.)  Plaintiff testified that her prednisone causes "pre-diabetes" and a lot of swelling.  (R. at 108.)  Plaintiff testified that she has not been prescribed a cane or walker, but sometimes uses her grandmother's cane to help with walking.  (R. at 111.)  Plaintiff testified that she has been told to avoid lifting more than five pounds for fear of fractures.  (R. at 115.)  Plaintiff testified that she has shortness of breath and cannot walk upstairs.  (R. at 119.)

    In addition to her physical pain, Plaintiff testified that she suffers from low self-esteem and depression.  (R. at 104 and 106.)  She sees her therapist every three weeks and takes Zoloft for her mental health condition.  (R. at 107-108.)  Plaintiff testified that she feels hopeless and like no one wants to listen to her.  (R. at 108.)  Plaintiff testified that she cries often and has trouble concentrating, and that her depression interferes with her appetite.  (R. at 115 and 117.)  She averred that she hears voices telling her to "do something bad" sometimes.  (R. at 117-18.)

    Plaintiff testified that she lives in Detroit with her mother, grandmother, seventeen year-old daughter, and twenty year-old son.  (R. at 90.)  According to Plaintiff, she lives in a house with a basement and upper floor, but she stays on one floor and does not use the stairs due to the pain in her legs.  (R. at 92-93.)  Plaintiff has a ninth grade education and averred that she dropped out of school because she

had trouble concentrating and could not read well.  (R. at 94.)  While in school, Plaintiff was in regular classes and had tutoring assistance with reading.  (R. at 95.) Plaintiff testified that her mother does her laundry in the basement of their home. (R. at 93.)  According to Plaintiff, she still struggles with reading, and cannot write much more than her name because of pain in her hands.   (R. at 96.)

Plaintiff averred that her past work was as a home care attendant for her aunt and as a baby sitter for her niece.  (R. at 96.)   She testified that her baby sitting job ended when the child's mother noticed that she was not paying attention to the child and "drifting off."  (R. at 97.)  Plaintiff does not have a driver's license and averred that she gets paranoid in the car.  (R. at 100.)  She gets rides from her siblings or her son, and does not take public transportation.  (Id.)

Plaintiff testified that, on an average day, she wakes up between five a.m. and eleven a.m.  (R. at 101.)  After that, she may just watch television for a few minutes or flip through magazines and does not do much else.  (R. at 101.)  She does not cook or help with housekeeping.  (R. at 102.)  Her mother sometimes helps with her hair, bathing, dressing and tying her shoes.  (R. at 101-102.) Plaintiff testified that her mother gives Plaintiff her daily medicine and does not allow her to take it herself.  (R. at 119.)

Plaintiff has custody of her seventeen year old daughter, whose father is remarried and living elsewhere.  (R. at 102.)  During high school, her daughter

8

took part in music and choir.  Plaintiff attended a few of her daughter's events over

the years, but testified that her mother attended her daughter's parent-teacher

conferences in her place.  (R. at 104-105.)  She recently attended her daughter's

high school graduation ceremony.  (R. at 104.)

### 2.     Vocational Expert Testimony

Kimberly Warner testified as the Vocational Expert ("VE") at the July 23,

2012 administrative hearing.  (R. at 120-129.)  The ALJ presented a series of

hypotheticals to the VE.  In the first hypothetical, the ALJ asked the VE to

determine if a hypothetical person of Plaintiff's age, educational background, and

work experience could perform her past relevant work as home care attendant at

the light exertional level with the following limitations:

> This person can occasionally climb stairs, crouch, kneel, stoop and
> bend, and she needs to avoid work place hazards such as dangerous
> moving machinery, unprotected heights, climbing ladders.

(R. at 121.)   The VE testified that Plaintiff could not perform her past relevant

work as a home care attendant because it was performed at the medium exertional

level.  (Id.)  The ALJ asked if the above hypothetical individual could perform

other jobs in the local economy and the VE answered in the affirmative.  (R. at

122.)  The VE testified that they hypothetical individual could perform work as a

sorter, with 15,000 jobs in southwest Michigan, counter clerk, with 1,800 jobs,

cleaner and polisher, with 3,500 jobs locally.  (Id.)  The VE clarified that these jobs

are simple, routine, repetitive in nature, and did not include any reading

responsibilities.  (R. at 122-23.)  The ALJ questioned whether the jobs require

more than occasional contact with coworkers or the public, and the VE testified

that the counter clerk position would require frequent contact with the public, but

the others would not.  (R. at 122.)  Finally, the VE clarified that none of the jobs

would require Plaintiff to climb stairs or walk about and would have the flexibility

to sit or stand while working.  (R. at 123.)

The ALJ then asked if there were any jobs in the state or local economy that

the above hypothetical individual could perform at the sedentary level and the VE

answered in the affirmative.  (R. at 123-24.)  According to the VE, the hypothetical

individual could perform work as an inspector, with 2,100 regional jobs, sorter,

with 4,200 regional jobs, and final assembler, with 1,500 regional jobs.  (R. at

124.)  The VE noted that these jobs are simple and require no reading or literacy.

(Id.)

In the second hypothetical, the ALJ asked the VE if there existed jobs in the

state or regional economy for the above hypothetical individual with the added

limitation that the individual cannot lift more than five pounds.  (R. at 124.)  The

VE testified that such a restriction would preclude the jobs in the "light" category,

and would reduce the sedentary numbers by half.  (Id.)  The VE further testified

that, if Plaintiff could elevate her legs during her lunch hour, it would not be work

10

preclusive.  The ALJ then asked if it would be work preclusive for the hypothetical individual to be off task more than 20% of the day and the VE answered that any more than 20% off task would preclude work.  (R. at 126.)

In the final hypothetical, the ALJ asked the VE to determine if there were jobs in the state or regional economy for a hypothetical individual who offered the same testimony as Plaintiff and was found to be fully credible.[4]  (R. at 126.)  The VE answered that such an individual could not perform Plaintiff's past relevant work or any other work in the local or regional economy for a variety of reasons, including the potential for absences due to pain, her memory and concentration issues, and her mood swings.  (R. at 126.)

Plaintiff's attorney then questioned the VE.  (R. at 127-129.)  The VE clarified that light work is defined as lifting up to twenty pounds, one third of the day, and up to ten pounds the rest of the day, and sedentary work is defined as lifting up to ten pounds one third of the day.  (R. at 127.)  The VE clarified that the jobs provided have varying requirements of hand intensity.  Plaintiff's counsel then asked the VE to consider Dr. Montstair's notations that Plaintiff has generalized fatigue and should be limiting from lifting, pushing, and pulling anything over five pounds.  The VE testified that such limitations would eliminate the jobs previously

---

[4] The VE was apparently present for Plaintiff's testimony, per the ALJ's statement that she would "like to ask [the VE's] impressions in general of [Plaintiff's] testimony since you were here for the, for the testimony."  (R. at 126.)

listed. (R. at 128.) In addition, the VE testified that in her non-medical opinion, fatigue would also be work preclusive. (R. at 128.)

## D. THE ADMINISTRATIVE DECISION

On October 24, 2012, the ALJ issued her decision. (R. at 66-79.) At step one of the sequential evaluation process,[2] the ALJ found that Plaintiff had not engaged in substantially gainful activity since October 14, 2010. (R. at 68.) At step two, the ALJ found that Plaintiff had the following severe impairments: systemic lupus erythematosus, osteoporosis, iron deficiency anemia, hypertension, kidney disease, major depressive disorder, and schizoaffective disorder. (R. at 69.)

---

[2] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence. *See* 20 C.F.R. §404.1520(a)(4). Although a dispositive finding at any step terminates the review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1. Is the claimant engaged in substantial gainful activity?
2. Does the claimant suffer from one or more severe impairments?
3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?
5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. §404.1520(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (R. at 69.) At step four of the sequential process, the ALJ evaluated Plaintiff's residual functional capacity ("RFC")[3] and determined that Plaintiff can perform sedentary work:

> [E]xcept that she is able to occasionally climb stairs, crouch, crawl, kneel, and stoop/bend and she must avoid exposure to workplace hazards such as moving machinery, unprotected heights, or climbing ladders.  Mentally, she is limited to work that is simple, routine, and repetitive and which requires no more than occasional contact with coworkers or the general public.

(R. at 71.)

Relying on the VE's testimony, the ALJ determined that Plaintiff was unable to perform her past relevant work as a home care attendant, but concluded that she was capable of performing one other job that exists in significant numbers in the state and local economy, namely as an inspector (DOT 669.687-014), sorter (DOT 521.687-086), and final assembler (DOT 713.687-086).  (R. at 77-78.)   She therefore concluded that Plaintiff was not disabled under the Social Security Act. (R. at 79.)

---

[3] The claimant's "residual functional capacity" is an assessment of the most the claimant can do in a work setting despite his or her physical or mental limitations. 20 C.F.R. §404.1545(a); *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002).

### E.  STANDARD OF REVIEW

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'"  *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. at 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. at 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . .").  Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).  In deciding whether substantial evidence supports the ALJ's decision, the court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from

14

[the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

## F. ANALYSIS

In her motion for summary judgment, Plaintiff asserts three main statements of error.[5] First, she contends that the ALJ erred in her RFC assessment. Second, Plaintiff argues that the ALJ erred by improperly discounting the opinions of her treating physicians. Finally, she asserts that the ALJ failed to consider her major depressive disorder when formulating her RFC. The Commissioner opposes

---

[5] Although Plaintiff quotes extensively from 20 C.F.R. § 404, Subpart P, Appendix I, § 14.00, she does not present an argument that the ALJ erred in her consideration of whether Plaintiff's condition met or medically equaled Listing 14.00.

Plaintiff's motion, asserting that she is entitled to a grant of summary judgment

because substantial evidence supports the ALJ's conclusions.

Unfortunately, Plaintiff's briefing lacks clarity, and while appearing to

"copy and paste" large block quotes of legal authority without supplying much

context, does not sensibly delineate her specific appellate issues.[6] Because the

bulk of Plaintiff's arguments appear to challenge the ALJ's weighing of the

opinion evidence, and these tie in to the RFC analysis, I will analyze those

arguments first. Plaintiff's first and third statements of error will be addressed

together. While the arguments in her motion for summary judgment are somewhat

jumbled, as best as the Undersigned can discern, she believes that the ALJ erred in

formulating her RFC by failing to consider her major depressive disorder and

improperly discounting the opinions of Plaintiff's treating physician and State

Agency examiners.

### 1.      Substantial Evidence Supports the Weight Assigned to Opinion Evidence

The ALJ must consider all medical opinions that he or she receives in

evaluating a claimant's case. 20 C.F.R. § 416.927(d). The regulations define

medical opinions as "statements from physicians . . . that reflect judgments about

---

[6] In Plaintiff's 25 page brief, approximately ten pages are simply block quotes citing to the regulations, case law, and/or the record, with very little analysis as to how the quotations apply to the facts in this case. The same is true of Plaintiff's reply brief.

the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. § 416.927(a)(2). "Administrative law judges are not bound by any findings made by State agency medical or psychological consultants, or other program physicians or psychologists." 20 CFR § 404.1527(e)(2)(i). The ALJ must, however, "consider findings and other opinions" of State Agency medical or psychological consultants. Id.

The ALJ generally gives deference to the opinions of a treating source "since these are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a patient's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone . . . ." 20 C.F.R. § 416.927(d)(2); *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 408 (6th Cir. 2009). To qualify as a treating source, the physician must have an "ongoing treatment relationship" with the claimant. 20 C.F.R. § 404.1502.

If the ALJ does not afford controlling weight to a treating physician's opinion, the ALJ must meet certain procedural requirements, specifically:

> [A]n ALJ must apply certain factors—namely, the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source—in determining what weight to give the opinion.

*Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004) (discussing 20

C.F.R. § 404.1527).  Furthermore, an ALJ must "always give good reasons in [the

ALJ's] notice of determination or decision for the weight [the ALJ] give[s] [the

claimant's] treating source's opinion."  20 C.F.R. § 416.927(d)(2).  Accordingly,

the ALJ's reasoning "must be sufficiently specific to make clear to any subsequent

reviewers the weight the adjudicator gave to the treating source's medical opinion

and the reasons for that weight."  *Friend v. Comm'r of Soc. Sec.*, No. 09-3889,

2010 WL 1725066, at *7 (6th Cir. 2010) (internal quotation omitted).  The United

States Court of Appeals for the Sixth Circuit has stressed the importance of the

good-reason requirement:

> "The requirement of reason-giving exists, in part, to let claimants
> understand the disposition of their cases," particularly in situations
> where a claimant knows that his physician has deemed him
> disabled and therefore "might be especially bewildered when told
> by an administrative bureaucracy that she is not, unless some
> reason for the agency's decision is supplied."  *Snell v. Apfel*, 177
> F.3d 128, 134 (2d Cir.1999). The requirement also ensures that the
> ALJ applies the treating physician rule and permits meaningful
> review of the ALJ's application of the rule. *See Halloran v.
> Barnhart*, 362 F.3d 28, 32–33 (2d Cir. 2004).

*Wilson*, 378 F.3d at 544–45.  Thus, the reason-giving requirement is "particularly

important when the treating physician has diagnosed the claimant as disabled."

*Germany-Johnson v. Comm'r of Soc. Sec.*, 312 F. A'ppx 771, 777 (6th Cir. 2008)

(citing *Rogers*, 486 F.3d at 242).

Here, Plaintiff asserts that it was improper for the ALJ to discount the opinions of treating physician Dr. Dhar and and State Agency consultative examiners, Dr. Montsair and Dr. Mills.  This position is unavailing, as the ALJ provided good reasons for discounting those opinions and substantial evidence supports the ALJ's treatment of opinion evidence.

### a.    Dr. Dhar

As a preliminary matter, Plaintiff seems to argue that the ALJ provided no weight to Dr. Dhar's entire opinion.  (*See, e.g.,* DE 15 at 5.)  The ALJ's opinion actually specifies that she gives no weight to Dr. Dhar's opinion that Plaintiff *was totally disabled*.  (R. at 73; "However, Dr. Dhar's conclusion that the claimant was totally disabled is given no weight because it is inconsistent with the objective medical evidence.")  Throughout her opinion, the ALJ frequently refers to Dr. Dhar's treating records and only assesses Dr. Dhar's opinion *on Plaintiff's disability* as one entitled to no weight.  It was entirely correct for the ALJ to assign no weight or special significance to Dr. Dhar's June 29, 2011 opinion of permanent and total disability, as this is consistent with 20 C.F.R. § 404.1527(d)(1), which reserves such opinions to the Commissioner.  (R. at 393.)

Plaintiff cites to *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399 (6th Cir. 2009) to support her position.  (DE 15 at 3.)  In *Blakely*, the Sixth Circuit held that the "ALJ's summary rejection of [the treating physician], without explaining the

19

weight given his opinions falls short of the Agency's own procedural requirements." *Id.* at 407. Here, however, the ALJ provided well more than a "summary rejection" of Dr. Dhar's opinion that Plaintiff was disabled. The ALJ noted that Dr. Dhar's statement that Plaintiff was disabled was inconsistent with substantial evidence in the record, as well as Dr. Dhar's own treatment notes. A treating physician's opinion is not entitled to controlling weight where it is not supported by other evidence in the record. *Sullivan v. Comm'r of Soc. Sec.*, 595 F. App'x 502, 506 (6th Cir. 2014). Here, the ALJ pointed to Dr. Dhar's notes and record evidence that Plaintiff's lupus was under control, that she had no active disease, and that she was encouraged to exercise in order to improve her shortness of breath, all of which tend to contradict a finding of total disability. (R. at 73.) Dr. Dhar also noted that, on October 3, 2011 and December 20, 2011, Plaintiff was doing well and exercising daily. (R. at 74, 602, and 613.) In addition, the record demonstrates that Plaintiff had a normal ejection fraction (DE 333, 413, 417), a normal range of motion (DE 289), and did not exhibit unusual symptoms of anxiety or depression (DE 318, 324, 327), all of which provide substantial evidence inconsistent to a finding of total disability. Furthermore, the ALJ correctly noted that the determination of Plaintiff's disability is an issue reserved to the Commissioner, and therefore, an opinion on this matter is not entitled to any special significance. 20 C.F.R. § 404.1527(d)(1); *Bass v. McMahon*, 499 F.3d 506,

511 (6th Cir. 2007). Substantial evidence and the law thus support the ALJ's decision in this regard, and I see no reason to disturb it.

The ALJ also complied with the *Wilson* requirements by providing dates associated with the treatment relationship, including specific appointment dates indicating the frequency of such visits over a period from September 2010 through July 2012. (R. at 72-73.) As addressed above, the ALJ spent a significant amount of time discussing the supportability of Dr. Dhar's opinion with the record as a whole in determining what weight to assign to the opinion. Accordingly, the ALJ appropriately considered Dr. Dhar's opinion under the regulations and substantial evidence supports her conclusions.

### b.   Dr. Montsair

Dr. Montsair examined Plaintiff once on behalf of the State Agency. According to Dr. Montsair, Plaintiff was limited to lifting, pushing, or pulling over five pounds and any manipulation by the hands could be affected by Plaintiff's lupus-related fatigue. (R. at 73.) The ALJ noted that Dr. Montsair's opinion was inconsistent with other objective evidence in the record and therefore assigned it little weight.

As a consultative examiner who was not Plaintiff's treating physician, the treating source rule does not apply to Dr. Montsair's opinion. *See Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 507 (6th Cir. 2006) ("[A] plethora of

21

decisions unanimously hold that a single visit does not constitute an ongoing treatment relationship. . . . .").  Instead, the ALJ must only "consider" the findings of a consultative examiner.  404.1527(e)(2)(i).

Substantial evidence supports the ALJ's treatment of Dr. Montsair's opinion. As it relates to Plaintiff's fatigue, the ALJ pointed to treating physician evidence that Plaintiff's lupus, osteoporosis, iron deficiency anemia, hypertension, and pulmonary difficulties were under control, that her shortness of breath was related to deconditioning, and that she was encouraged to exercise.  (R. at 73 and 333.)   In addition, the ALJ noted that Plaintiff's cardiologist found clear lungs, and 5/5 strength.  (R. at 74.)  The record also demonstrates that Plaintiff had a normal range of motion (DE 289) and normal musculature (DE 324).  Finally, the ALJ pointed to objective medical evidence, including multiple echocardiograms demonstrating a normal ejection fraction.  (R. at 73 and 74.)  Such evidence indicates that Plaintiff's fatigue was treatable and improving and Dr. Montsair's opinion was inconsistent with both opinion and objective medical evidence in the record.

### c.    Dr. Mills

Dr. Mills examined Plaintiff twice on behalf of the State Agency.  (DE 371-375 and 387-391.)  At the first visit, on February 5, 2011, Dr. Mills determined that Plaintiff was not capable of managing her income and did "not appear suitable

for work, due to the nature of her mood swings, psychosis, depressive issues, and medical problems." (R. at 375.) At the second examination, on March 26, 2011, Dr. Mills noted that Plaintiff "does appear capable of managing her income, "but felt" that the "stress and pressure [of employment] would cause her problems." (R. at 391.) The ALJ assigned the February 5, 2011 opinion no weight because Dr. Mills' assessment was entirely based on Plaintiff's subjective complaints and not upon any objective evidence. (R. at 76.) The ALJ assigned Dr. Mills' March 26, 2011 opinion some weight because it was consistent with Plaintiff's treating therapist's assessment and not inconsistent with Dr. Dhar's observation that Plaintiff does not exhibit evidence of unusual anxiety or depression. (Id.) This demonstrates a careful analysis on the part of the ALJ and that, far from dismissing information that was supportive of Plaintiff's position, she took it into consideration.

Substantial evidence supports the ALJ's conclusions as to Dr. Mills' opinions. First, an ALJ is entitled to discount a consultative examiner's opinion because it was based primarily on Plaintiff's subjective complaints. *See Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 156 (6th Cir. 2009) (concluding that substantial evidence supported the ALJ's decision to discount the opinion of a treating physician because it was based on the claimant's subjective complaints rather than on objective medical evidence). Second, substantial evidence in the

record indicates that Plaintiff's mental health was generally normal by 2010.  As

evidence for her position, Plaintiff points to Dr. Dhar's May 28, 2009 note that

Plaintiff was disoriented and psychotic.  (DE 12 at 22, R. at 513.)  However, a

closer read of the note indicates that Dr. Dhar was summarizing Plaintiff's *2007*

diagnosis of lupus. (R. at 513, "At that time, she presented . . . .").  That evidence

was considered by the previous ALJ in the June 27, 2008 decision in which

Plaintiff was denied benefits.[7]  (R. at 144.)  "Absent evidence of an improvement

in a claimant's condition, a subsequent ALJ is bound by the findings of a previous

ALJ."  *Drummond*, 126 F.3d at 842.  Even assuming the current ALJ could

consider such an opinion, at nearly every point thereafter, Dr. Dhar consistently

found that Plaintiff was alert and oriented and exhibited no unusual anxiety or

depression.  (R. at 290, 318, 324, 327, 333, 342, 530, 593, 603, 614, 623, 643, 680,

703, 712, 716, 725.)  Furthermore, other evidence in the record indicates that

Plaintiff reported that she was not experiencing hallucinations, delusions, or

psychotic thoughts (R. at 428), that she was doing well (R. at 411), and that her

depression was better (R. at 602, 613, 702, and 711).

---

[7] It appears from the record that Plaintiff did not challenge the previous ALJ's
decision, finding that she was not disabled.  Nor does she discuss any such appeal
in her briefing in the instant matter.

### 2.   Substantial Evidence Supports the ALJ's Conclusions with Regard to Plaintiff's RFC

Plaintiff's RFC is "the most [he or she] can still do despite the physical and mental limitations resulting from [his or] her impairments." *Poe*, 342 F. App'x at 155; s*ee also* 20 C.F.R. §§ 404.1545(a), 416.945(a). The determination of Plaintiff's RFC is an issue reserved to the Commissioner and must be supported by substantial evidence. 20 C.F.R. §§ 404.1527(3), 416.927(e). "'ALJs must not succumb to the temptation to play doctor and make their own independent medical findings.'" *Simpson v. Comm'r of Soc. Sec.*, 344 F. App'x 181, 194 (6th Cir. 2009) (quoting *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996)).

Pursuant to Social Security Rule 96-8p, the RFC assessment must include:

> [A] narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations). In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.

S.S.R. 96-8, 1996 WL 374184, at *6-7.

25

### a.     Dr. Montsair's Opinion

Here, Plaintiff argues that the ALJ violated Social Security Regulation 8p because the fatigue associated with Plaintiff's lupus precludes her from carrying out sustained activities on a regular and continuing basis.  As evidence for this assertion, Plaintiff points to the VE's testimony that, if Plaintiff's RFC were consistent with the limitations opined by Dr. Montsair, including his five-pound weight restriction, were consistent with Plaintiff's testimony and would be work preclusive.  (DE 12 at 12.)  Defendant argues that such a position is invalid because the ALJ properly assigned little weight to Dr. Montsair's opinion, noting that it was inconsistent with other evidence in the record.

Plaintiff's argument on this point is nonetheless unavailing.  As noted above, the ALJ properly discounted Dr. Montsair's opinion, determining that it was not an accurate reflection of Plaintiff's impairments.  (R. at 73.)  Furthermore, there is substantial evidence in the record to show that Plaintiff was not limited to lifting five pounds or less.   For example, Dr. Dhar indicated that Plaintiff's osteoporosis was under fair control (DE 288, 326, 615, 623), Plaintiff was found to have normal musculature and no joint deformity (DE 318, 327, 333, 530, 603), and normal range of motion for her age (DE 642).  Dr. Dhar also noted that Plaintiff was exercising daily.  (DE 69.)

26

Finally, the VE testified that the five-pound weight restriction opined by Dr. Montsair would be work preclusive in the light category.  (R. at 124.)  However, the VE indicated that such a restriction would not be work preclusive in the sedentary category, but would merely reduce the number of sedentary jobs in half.  (Id.)  In the RFC, the ALJ limited Plaintiff to sedentary work.  (R. at 71.)  The only work preclusive element the VE testified to was Plaintiff's testimony, *if taken as completely true*.  (R. at 126.)  The ALJ concluded that Plaintiff's testimony was *not* entirely credible, and Plaintiff does not challenge that finding.  (R. at 72.)  Accordingly, Plaintiff's testimony was not an accurate reflection of her impairments and therefore the VE's finding of work preclusivity based on her testimony does not constitute substantial evidence.  *See Smith v. Halter*, 307 F.3d 377, 378 (6th Cir. 2001) ("A vocational expert's testimony . . . may constitute substantial evidence where the testimony is elicited in response to a hypothetical question that accurately sets forth the plaintiff's physical and mental impairments.").

### b.    Plaintiff's Major Depressive Disorder

Plaintiff next argues that the ALJ failed to take Plaintiff's major depressive disorder into account when determining her RFC.  Plaintiff notes that Dr. Dhar described Plaintiff as "disoriented and psychotic" *in 2007*, along with Dr. Mills' 2011 opinion that Plaintiff was not "suitable for work, due to the nature of her

27

mood swings, psychosis, depressive issues, and medical problems." (DE 12 at 22-23.)  Defendant argues that the ALJ properly discounted Dr. Mills' 2011 opinion, was not required to consider Dr. Mills' 2007 opinion, and that substantial evidence in the record indicates that Plaintiff's psychological findings were generally normal.

The ALJ properly addressed Plaintiff's major depressive disorder in her analysis.  As noted above, *during the relevant period* (2010 through 2012), Dr. Dhar consistently indicated that Plaintiff showed no unusual anxiety or evidence of depression, save one particular incident in September 2011, which related to her social security denial.  (R. at 622.)  However, at her next visit on October 3, 2011, Dr. Dhar noted that her depression was "much better." (R. at 613.)  The ALJ also pointed to evidence from the Eastwood Clinic, which indicated that Plaintiff was doing very well, along with Dr. Dhar's April 4, 2012 note that he had no concerns regarding Plaintiff's psychiatric symptoms.  (R. at 76-77, 711-12.)  The ALJ provided an appropriate narrative discussion describing how the evidence supported her conclusion and explaining how she resolved inconsistencies or ambiguities in the record.  (R. at 76-77.) Accordingly, the ALJ appropriately considered all of Plaintiff's impairments when assessing her RFC and substantial evidence supports her conclusions.

### G.   CONCLUSION

In sum, from a review of the record as a whole, the Undersigned concludes that substantial evidence supports the ALJ's decision denying benefits.  The ALJ engaged in a thorough analysis and provided a well-supported opinion.  While the Undersigned acknowledges that a decision in Plaintiff's favor would have been within the range of possible outcomes, this Court is not charged with or authorized to perform a *de novo* review.  Mindful of the standard of review, which requires affirmance where "the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards," *Rabbers*, 582 F.3d at 651, the ALJ's decision should be upheld.  Accordingly, it is **RECOMMENDED** that the Court **DENY** Plaintiff's motion for summary judgment, **GRANT** Defendant's motion for summary judgment, and **AFFIRM** the Commissioner of Social Security's decision.

### III.   PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some

issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 932 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1273 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," *etc.* Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," *etc.* If the Court determines that any objections are without merit, it may rule without awaiting the response.


Dated: May 29, 2015                          s/Anthony P. Patti
                                             Anthony P. Patti
                                             UNITED STATES MAGISTRATE JUDGE

30

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the foregoing document was sent to parties of record on May 29, 2015, electronically and/or by U.S. Mail.

s/Michael Williams
Case Manager for the
Honorable Anthony P. Patti
(313) 234-5200